UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 22-cv-62300-BLOOM/Valle

NAUTILUS INSURANCE COMPANY,

    Plaintiff,

v.

PINNACLE ENGINEERING & DEVELOPMENT, INC.,
EMUNA CONSTRUCTION, LLC,

    Defendants.
_____/

## ORDER ON MOTION FOR SUMMARY JUDGMENT

**THIS CAUSE** is before the Court upon Defendant/Cross-Plaintiff Emuna Construction, LLC's ("Emuna") Motion for Summary Judgment, ECF No. [27] ("Motion"). Plaintiff/Cross-Defendant Nautilus Insurance Company ("Nautilus") filed a Response in Opposition, ECF No. [30], to which Emuna filed a Reply, ECF No. [32]. The Court has carefully reviewed the Motion, all opposing and supporting submissions,[1] the record in this case, the applicable law, and is otherwise fully advised. For the reasons set forth below, the Motion is denied.

**I. BACKGROUND**

Nautilus initiated the instant action on December 8, 2022, by filing a Complaint for Declaratory Judgment seeking a declaration that claims asserted against Defendant Pinnacle Engineering & Development, Inc. ("Pinnacle") by Emuna in an Underlying Lawsuit are not covered under insurance policies issued by Nautilus to Pinnacle. *See* ECF No. [1]. Nautilus further

---

[1] Emuna filed a Statement of Material Facts, ECF No. [26] ("SMF"), with its Motion for Summary Judgment. Nautilus filed a Response to Defendant's SMF ("RSMF"), and a Statement of Additional Material Facts ("SAMF"), ECF No. [31]. Emuna filed a Response to Nautilus's SAMF ("RSAMF"), ECF No. [33].

seeks a declaration that it has no duty to defend Pinnacle, no duty to indemnify Pinnacle, and Nautilus has the right to withdraw its defense of Pinnacle in the Underlying Lawsuit. *Id*.

On March 20, 2023, Emuna filed its Answer and Counterclaim. ECF No. [17]. Therein, Emuna asserts one count of breach of contract, alleging that Nautilus breached its insurance policy "by denying coverage and/or failing to make a coverage determination for Emuna's liability . . . for the property damage caused by Pinnacle." *Id*. ¶ 33.

Emuna brings the instant Motion arguing that the Court should find that Emuna is an additional insured under the insurance policies issued by Nautilus to Pinnacle, Nautilus has a duty to indemnify Emuna for faulty work completed by Pinnacle, and Nautilus breached that duty. *See generally* ECF No. [27]. Nautilus responds that Emuna is not an additional insured under the policies, and even if the Court were to find that Emuna is an additional insured, it has not breached any obligations it owes to Emuna. *See generally* ECF No. [30].

## II. MATERIAL FACTS

### A. The Policies

Nautilus issued Pinnacle commercial general liability insurance under policy numbers NN1087682 and NN1254993 (collectively, the "Policies"). SMF ¶ 1. Policy NN1087682 was in effect from January 23, 2020 to January 23, 2021, and Policy NN1254993 was in effect from April 22, 2021 to September 18, 2021. *Id*. ¶ 2. The Policies are subject to the Coverage Limitation and Exclusion – Residential Construction Operations Endorsement (the "Endorsement") which provides that certain construction projects are excluded from coverage including "the following construction projects: a. Any new townhouse or residential condominium project where the total number of individual residential units is greater than twenty-five (25), regardless of number of buildings, developments, phases, or associations . . . .." *Id*. ¶ 4. The Policies define the term "Residential housing units" as "detached single family or multiple family dwellings, duplexes,

triplexes, dormitories or any other housing or dwelling built or used, in whole or in part, for the purpose of residential occupancy. For purpose of this endorsement, each duplex will be considered two residential housing units, each triplex will be considered three residential housing units, and so forth. Residential housing units does not include apartments." *Id*. ¶ 5.

### B. Townhome Development Project

Emuna contracted with BCD Dania Oaks, LLC ("BCD"), the owner of the real property located at 5461 SW 40th Ave, Dania Beach, Florida 33314 (the "Property"), to construct a townhome development at the Property. *Id*. ¶¶ 7-8. The townhome development contains 18 detached townhome units, or 57 units including both attached and detached units. SAMF ¶ 27; RSAMF ¶ 27.

"Emuna and Pinnacle executed a subcontract for Pinnacle to perform underground utility construction services." SMF ¶ 11. The Subcontract required that Pinnacle secure and maintain commercial general liability insurance to cover claims for property damages resulting for their services and that the policy name Emuna as an additional insured for liability arising out of the Subcontract. *Id*. ¶¶ 12-13.

On April 15, 2022, Emuna sent Nautilus notice that it was reporting "a claim on behalf of Emuna" for faulty work performed by Pinnacle. ECF No. [26-1] at 51-52. Emuna cooperated with Nautilus's investigation. SMF ¶ 20. In December 2022, Emuna's insurance carrier sent Nautilus notice of that BCD was alleging damages. ECF No. [26-1] at 54-56. A demand letter or claim from BCD to Emuna is not part of the record, and Nautilus disputes whether BCD's counsel formally made a demand on Emuna. SMF ¶ 21; RSMF ¶ 21.

Emuna and BCD entered into a Settlement Agreement dated June 2, 2023, which included the following language: "[w]hereas, the Owner has demanded that the Contractor be liable for the damage caused by the defective Pinnacle Work and that the Contractor compensate the Owner for

3

such damage." ECF No. [26-1] at 58-62.

### III. LEGAL STANDARD

#### A. Summary Judgment

A court may grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The parties may support their positions by citations to materials in the record, including depositions, documents, affidavits, or declarations. *See* Fed. R. Civ. P. 56(c). "A factual dispute is 'material' if it would affect the outcome of the suit under the governing law, and 'genuine' if a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)).

A court views the facts in the light most favorable to the non-moving party, draws "all reasonable inferences in favor of the nonmovant and may not weigh evidence or make credibility determinations[.]'" *Lewis v. City of Union City, Ga.*, 934 F.3d 1169, 1179 (11th Cir. 2019); *see also Crocker v. Beatty,* 886 F.3d 1132, 1134 (11th Cir. 2018) ("[W]e accept [the non-moving party's] version of the facts as true and draw all reasonable inferences in the light most favorable to him as the non-movant." (citation omitted)). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which a jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252. "If more than one inference could be construed from the facts by a reasonable fact finder, and that inference introduces a genuine issue of material fact, then the district court should not grant summary judgment." *Bannum, Inc. v. City of Fort Lauderdale*, 901 F.2d 989, 996 (11th Cir. 1990) (citation omitted).

4

### B. Evaluation of an Insurance Policy

An insurer's duty to defend arises from the insurance contract and policy. *See Allstate Ins. Co. v. RJT Enters., Inc.*, 692 So.2d 142, 144 (Fla. 1997) ("[I]f there is no contractual duty to defend in the parties' contract then there is no duty to defend."). That is, an insurer's duties toward its insured arise from the legal effects of the relevant policy provisions. *See Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Brown*, 787 F. Supp. 1424, 1427 (S.D. Fla. 1991). Therefore, summary judgment may be "appropriate in declaratory judgment actions seeking a declaration of coverage when the insurer's duty, if any, rests solely on the applicability of the insurance policy, the construction and effect of which is a matter of law." *Northland Cas. Co. v. HBE Corp.*, 160 F. Supp.2d 1348, 1358 (M.D. Fla. 2001) (citing *Talat Enters., Inc. v. Aetna Life & Cas.*, 952 F. Supp. 773 (M.D. Fla. 1996)). "An insurer's duty to indemnify is narrower than its duty to defend and must be determined by analyzing the policy coverages in light of the actual facts in the underlying case." *Sinni v. Scottsdale Insurance Co.*, 676 F. Supp. 2d 1319, 1323 (M.D. Fla. 2010) (citing *State Farm Fire & Cas. Co. v. CTC Dev. Corp.*, 720 So.2d 1072, 1077 n. 3 (Fla. 1998) and *Hagen v. Aetna Cas. & Sur. Co.*, 675 So.2d 963, 965 (Fla. 5th DCA 1996)).

"Under Florida law, an insurance policy is treated like a contract, and therefore ordinary contract principles govern the interpretation and construction of such a policy." *Pac. Emp'rs Ins. Co. v. Wausau Bus. Ins. Co.*, No. 3:05-cv-850-J-32TEM, 2007 WL 2900452, at *4 (M.D. Fla. Oct. 2, 2007) (citing *Graber v. Clarendon Nat'l Ins. Co.*, 819 So.2d 840, 842 (Fla. 4th DCA 2002)). As with all contracts, the interpretation of an insurance contract—including determining whether an insurance provision is ambiguous—is a question of law to be determined by the court. *Id*.; *Travelers Indem. Co. of Illinois v. Hutson*, 847 So.2d 1113 (Fla. 1st DCA 2003) (stating that whether an ambiguity exists in a contract is a matter of law).

Further, "[u]nder Florida law, insurance contracts are construed according to their plain

5

meaning." *Garcia v. Fed. Ins. Co.*, 473 F.3d 1131, 1135 (11th Cir. 2006) (quoting *Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co.*, 913 So.2d 528, 532 (Fla. 2005)). The "terms of an insurance policy should be taken and understood in their ordinary sense and the policy should receive a reasonable, practical and sensible interpretation consistent with the intent of the parties- not a strained, forced or unrealistic construction." *Siegle v. Progressive Consumers Ins. Co.*, 819 So.2d 732, 736 (Fla. 2002) (quoting *Gen. Accident Fire & Life Assurance Corp. v. Liberty Mut. Ins. Co.*, 260 So.2d 249 (Fla. 4th DCA 1972); *see also Gilmore v. St. Paul Fire & Marine Ins.*, 708 So.2d 679, 680 (Fla. 1st DCA 1998) ("The language of a policy should be read in common with other policy provisions to accomplish the intent of the parties."). However, if there is more than one reasonable interpretation of an insurance policy, an ambiguity exists and it "should be construed against the insurer." *Pac. Emp'rs Ins.*, 2007 WL 2900452, at *4 (citing *Purrelli v. State Farm Fire & Cas. Co.*, 698 So.2d 618, 620 (Fla. 2d DCA 1997) ).

A coverage clause is generally interpreted as broadly as possible to ensure the greatest amount of insurance coverage. *Id*. at *5 (citing *Westmoreland v. Lumbermens Mut. Cas. Co.*, 704 So.2d 176, 179 (Fla. 4th DCA 1997)). To determine the parties' contractual intent, a court may only consider the language in the insurance policy, unless the policy is ambiguous. *Fireman's Fund Ins. Co. v. Tropical Shipping & Constr. Co., Ltd.*, 254 F.2d 987, 1003 (11th Cir. 2001) (citing *Towne Realty v. Safeco Ins. Co. of Am.*, 854 F.2d 1264, 1267 (11th Cir. 1988)). "As a general rule, in the absence of some ambiguity, the intent of the parties to a written contract must be ascertained from the words used in the contract, without resort to extrinsic evidence." *Id*. (quoting *Lee v. Montgomery*, 624 So.2d 850, 851 (Fla. 1st DCA 1993)).

### IV. DISCUSSION

Emuna argues that summary judgment is appropriate because (1) it is an additional insured

under the Policies; (2) Pinnacle performed faulty work triggering coverage under the Policies so (3) Nautilus had a duty to defend and indemnify Emuna from claims brought by BCD; and (4) breached that contractual duty. *See generally* ECF No. [27]. Emuna further asserts that exclusions asserted by Nautilus do not bar coverage. *Id*. at 6-8. Nautilus responds that that "(a) Emuna has not established it qualifies as an additional insured on the Policies; (b) even if Emuna qualifies as an additional insured, Emuna cannot seek first-party coverage for the claims it asserts against Pinnacle Engineering in the Underlying Lawsuit; (c) Nautilus could not have breached any defense obligations to Emuna because no suit has been filed against Emuna; (d) Nautilus could not have breached any indemnity obligations to Emuna because Emuna has not been found 'legally obligated to pay damages' because of 'property damage' to which the insurance applies and Nautilus cannot be bound to the putative settlement entered into by Emuna and BCD; and (2) the Policies' Residential Construction Operations Exclusion is clear and unambiguous and plainly bars coverage for the claims asserted in the Underlying Lawsuit— relative to any potential insured." ECF No. [30] at 9. The Court considers each argument in turn.

### A. Additional Insured

First, Emuna argues that it is an additional insured under the Policies. ECF No. [27] at 3-4. Nautilus responds that Emuna cannot meet its burden to demonstrate that it was an additional insured under the Policies.

The Policies contain an Endorsement which pertains to Additional Insureds under the Policies, (the "AI Endorsement"). Pursuant to the AI Endorsement:

> **Who is An Insured** is **amended** to include as an additional insured any person or organization for whom you are performing operations when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy. Such person or organization is an additional insured only with respect to liability for 'bodily injury', 'property damage' or 'personal and advertising injury' caused, in whole or in part, by:

> a. Your acts or omissions, or the acts or omissions of those acting on your behalf in the performance of your ongoing operations for the additional insured; or
> b. "Your work" and included in the "products-completed operations hazard" that was completed by or on behalf of any insured after the date shown in the Schedule of this endorsement
> but only for "occurrences" or coverages not otherwise excluded in the Coverage Part to which this endorsement applies.

ECF No. [1-6] at 75.

Emuna argues that because the AI Endorsement affords it coverage for property damage caused by Pinnacle's acts or omissions, "Emuna is additional insured when Pinnacle's work is ongoing and after it completes the work." ECF No. [27] at 4.

Nautilus relies on multiple cases from this district applying Florida law, in which the courts determined that a putative additional insured's liability is caused in whole or in part by the named insured only where the additional insured faces vicarious liability for acts or omissions of the named insured. *See Cincinnati Specialty Underwriters Ins. Co. v. KNS Group, LLC*, 561 F. Supp. 3d 1298, 1314-16 (S.D. Fla. 2021), *aff'd,* No. 21-13628, 2022 WL 5238711 (11th Cir. Oct. 6, 2022) (finding that allegations of vicarious liability were necessary to find an insurer liable for the coverage of an additional insured where the policy specified liability only for the acts or omissions of the named insured); *Amerisure Ins. Co. v. Seneca Specialty Ins. Co.*, No. 20-20442-CIV, 2020 WL 3317035, at *5 (S.D. Fla. June 18, 2020) (finding that because an additional insured "was not held *vicariously* liable for the direct negligence of [the named insured], and therefore, because the *liability* was not premised on injuries 'caused, in whole or in part by' [the named insured], it necessarily follows that [the additional insured] is not covered as an additional insured under the [policy endorsement]."). Nautilus argues that "Emuna has provided no evidence that it is being held vicariously liable for [Pinnacle's] acts or omissions" and therefore "the terms of the AI Endorsement are not satisfied, and Emuna cannot qualify as an additional insured." ECF No. [30] at 10.

8

The underlying Complaint makes clear Emuna's position that "Pinnacle failed to perform underground utility construction services" and "[a]s a result of Pinnacle's failure to perform the services required under the Subcontract, Emuna has incurred and continues to incur substantial damages." ECF No. [1-5] ¶¶ 28-30. It is therefore apparent that the AI Endorsement applies because Emuna seeks coverage as an additional insured for property damage caused by the acts or omissions of Pinnacle, the primary insured under the Policies. The underlying complaint alleges that BCD is not seeking to hold Emuna liable for its own negligence as in the cases cited by Nautilus, but instead to hold it vicariously liable for the failings of its subcontractor Pinnacle. Accordingly, the Court finds that there is no dispute of material fact. Emuna is an additional insured under the AI Endorsement.

### B. Whether Coverage was Triggered

Emuna argues that defective work performed by Pinnacle under the Subcontract caused property damage covered under the Policies. ECF No. [27] at 4-5. Emuna further argues that Nautilus therefore had a duty to defend and indemnify Emuna from claims asserted by BCD, the Property's owners. *Id*. at 5-6. Nautilus responds that "it is undisputed that no third-party lawsuit has been asserted against Emuna, nor has it otherwise become 'legally obligated to pay' damages associated with Pinnacle Engineering's work. Therefore, Emuna's potential additional insured status does not provide a direct basis for recovery under the Policies." ECF No. [30] at 11.

Emuna submits in its SMF that "BCD made claims against Emuna to repair the subject property damage." In support, Emuna cites to the attached affidavit of Miguel Bubis, a manager and principal of Emuna. ECF No. [26-1]. However, as Nautilus correctly points out, "Emuna has yet to provide any documentation of a third-party claim against it by BCD prior to the June 2, 2023 settlement agreement between the parties." ECF No. [30] at 13. As such, a genuine dispute of fact exists as to when a claim was made by BCD to Emuna for damage caused by Pinnacle and the

precise nature of that claim. Moreover, the case law cited by the parties suggests that the dispute of fact regarding when a claim or demand was made, and whether its contents are material.

Emuna cites to a district court case from this circuit in which the court, applying Florida law, determined that an insured need not wait to be sued and lose a reasonable opportunity to compromise when faced with an obligation it cannot resist. *Zurich Am. Ins. Co. v. Cutrale Citrus Juices USA, Inc.*, 5:00-CV-149-OC-10GRJ, 2002 WL 1433728, at *4 (M.D. Fla. Feb. 11, 2002) (citing *Post Houses, Inc. v. Fireman's Fund Ins. Co.*, 469 So. 2d 863, 864 (Fla. 1st DCA 1985)). In *Post Houses,* the First District Court of Appeal found that "the fact of voluntary payment does not negative the right to indemnity, since a person confronted with an obligation that he cannot legally resist is not obligated to wait to be sued and to lose a reasonable opportunity for compromise." *Id*. That court noted that "Post Houses had notice and a reasonable opportunity to intervene and failed to do so." *Id*. In its Reply, Emuna cites *St. Paul Fire & Marine Ins. Co. v. Rosen Millennium, Inc.*, 337 F. Supp. 3d 1176 (M.D. Fla. 2018), in which the court looked to the notice of claim and demand letter because there was no underlying litigation to determine whether the insurer had a duty to defend after a data breach. *Id*. at 1182. The court determined that the detail in both the notice and demand letter was sparse and ruled that "because Defendants have not made such claims, the issue of whether the CGL Policies would cover those claims is not ripe." *Id*. at 1183.

Nautilus relies on *Ayers v. State Farm Mut. Auto. Ins. Co.*, 316 F. Supp. 3d 1324 (M.D. Fla. 2018), in which a district court in this circuit considered a coverage dispute on cross motions for summary judgment. *Id* at 1327. There, the plaintiff sought to recover the costs of hiring pre-suit counsel. *Id*. at 1329. The *Ayers* court interpreted the relevant insurance policy and found "the Defense Provision's unambiguous language—that is, State Farm's "right to defend"—does not

compel a reading that State Farm is obligated to defend a claim by hiring pre-suit counsel for an insured." *Id*. Nautilus also argues that because Emuna has not provided a claim or demand letter served on it by BCD, Emuna is not entitled to summary judgment.

There is record evidence that demonstrates that Emuna sent Nautilus notice on April 15, 2022, indicating that Emuna was making a claim for faulty work performed by Pinnacle. ECF No. [26-1] at 51-52. Emuna also attached a notice provided from its insurance carrier to Nautilus notifying Nautilus that BCD was making a claim against Emuna for damages exceeding $1,200,000,00. *Id*. at 54-56. The Settlement Agreement between Emuna and BCD dated June 2, 2023, is also attached to Emuna's SMF. *Id*. at 58-62. The Settlement Agreement between Emuna and BCD specifically states "Whereas, the Owner has demanded that the Contractor be liable for the damage caused by the defective Pinnacle Work and that the Contractor compensate the Owner for such damage." ECF No. [26-1] at 58. Despite that line in the Settlement Agreement, the nature and extent of any claim made is uncertain as a claim or demand letter from BCD to Emuna is not part of the record. Like in *St. Paul Fire*, the Court is therefore left without an adequate basis to determine whether the Policies are applicable for the purpose of determining that no dispute of material fact exists regarding Nautilus's duty to defend and/or indemnify Emuna. *See* 337 F. Supp. 3d at 1182-83.

Nautilus correctly points out that "Emuna has yet to provide any documentation of a third-party claim against it by BCD prior to the June 2, 2023 settlement agreement between the parties." ECF No. [30] at 13. As such, whether Emuna was confronted with an obligation it could not legally resist and provided notice of such obligation to Nautilus prior to entering the Settlement Agreement is a disputed material fact. Because Emuna is the moving party and has not established that there are no genuine disputes of material fact allowing it to be entitled to judgment as a matter

Case No. 22-cv-62300-BLOOM/Valle

of law, the Motion must be denied. The Court need not address the parties' remaining arguments.

## V. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that Emuna's Motion for Summary Judgment, **ECF No. [27]**, is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on September 21, 2023.

_____
**BETH BLOOM
UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record