## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 22-cv-62300-BLOOM/Valle

NAUTILUS INSURANCE COMPANY,

      Plaintiff,

v.

PINNACLE ENGINEERING & DEVELOPMENT, INC.,
EMUNA CONSTRUCTION, LLC,

      Defendants.

_____/

### <u>ORDER ON MOTIONS FOR SUMMARY JUDGMENT</u>

**THIS CAUSE** is before the Court upon Defendant/Cross-Plaintiff Emuna Construction, LLC's ("Emuna") Motion for Summary Judgment, ECF No. [50][1], and Plaintiff/Cross-Defendant Nautilus Insurance Company's ("Nautilus") Motion for Summary Judgment, ECF No. [51][2]. Regarding Emuna's Motion for Summary Judgment, Nautilus filed a Response, ECF No. [55], and Emuna filed a Reply, ECF No. [57]. Regarding Nautilus' Motion for Summary Judgment, Emuna filed a Response, ECF No. [53], and Nautilus filed a Reply, ECF No. [59]. Pinnacle Engineering & Development, Inc. ("Pinnacle") failed to respond to either Motion. For the reasons that follow, Nautilus' Motion for Summary Judgment is granted, and Emuna's Motion for Summary Judgment is denied.

---

[1] Emuna filed its corresponding Statement of Material Facts, ("DSMF"), ECF No. [49]. Nautilus filed a Response in Opposition to Emuna's Statement of Material facts, ("ODSMF"), ECF No. 56. Emuna filed its Reply Statement of Material Facts, ("RDSMF") ECF No. [58].

[2] Nautilus filed its corresponding Statement of Material Facts, ("PSMF"), ECF No. [52]. Emuna filed a Response in Opposition to Nautilus' Statement of Material Facts ("OPSMF"), ECF No, [54]. Nautilus filed its Reply Statement of Material Facts, ("RPSMF"), ECF No. [60].

## I.    BACKGROUND

Nautilus filed this action for Declaratory Judgment against Emuna, a general contractor, and Pinnacle, its subcontractor, related to faulty underground engineering work resulting in property damage. ECF No. [1]. Nautilus seeks a Declaration that it has no duty to defend Pinnacle under insurance policies issued to Pinnacle with respect to a lawsuit brought by Emuna against Pinnacle in state court and no duty to defend Emuna under the insurance policies for any claims asserted against it from work performed by Pinnacle on or at the Project. *Id.*

The underlying facts are as follows: BCD Dania Oaks, LLC ("BCD") is the owner of the property at 5461 SW 40th Avenue, Dania Beach, FL, 33134 ("Property"). On July 10, 2019, BCD contracted with Emuna to construct and serve as general contractor for a townhome development called Oaks Place Townhomes ("Project") on the Property. On January 21, 2020, Emuna contracted with Pinnacle to perform underground utility construction for the Project. Emuna alleges Pinnacle failed to perform and otherwise breached its contract with Emuna and abandoned the Project on September 14, 2021. On April 15, 2022, Emuna became aware of damage to the Property due to the alleged faulty work conducted by Pinnacle. ECF No. [50] at 5-6. The damages affected the Property's water line, sewer system, pavers, plumbing lines, sidewalk, and lime rock. *Id*. ¶ 23. Between April and May of 2022, Emuna gave Pinnacle notices of the defects and opportunity to cure, but Pinnacle failed to effectuate any repairs. ECF No. [1-5] ¶¶ 17-18. During that time, Emuna reported its claim for property damage to Nautilus, and BCD advised Emuna it would seek to hold Emuna vicariously liable for the damage to its Property. *Id*.

On July 26, 2022, Emuna sued Pinnacle in the Seventeenth Judicial Circuit in and for Broward County, Florida, *Emuna Construction, LLC v. Pinnacle Engineering & Development, Inc*, Case Number CACE22010941 ("Underlying Action"), seeking damages for Count I: Breach of Contract; Count II: Negligence; and Count III: Indemnification. ECF No. [1-5]

Nautilus is currently defending Pinnacle in the Underlying Action subject to a reservation of rights. ECF No. [43-1]. On October 27, 2022, BCD sent Emuna a demand for $1,247,023.57 for the damages it incurred. ECF No. [50] at 6. In December 2022, Emuna tendered BCD's claim to Nautilus, and on December 8, 2022, Nautilus filed its Complaint for Declaratory Judgment in this Court. *Id.*; ECF No. [1]. In Nautilus' Complaint, it alleges the Policies' Coverage Limitation and Exclusion – Residential Construction Operations Endorsement precludes coverage in this matter. *Id.*

On March 20, 2023, Emuna filed its Answer and Counterclaim. ECF No. [17]. Emuna asserts one Count of Breach of Contract against Nautilus for "denying coverage and/or failing to make a coverage determination for Emuna's liability . . . for the property damage caused by Pinnacle." *Id.* ¶ 33. Thereafter, on June 2, 2023, Emuna reached a settlement with BCD wherein the parties agreed the damages incurred by BCD amounted to $1,410,154.90, but capped Emuna's liability at $920,058.80, unless Emuna can recover additional funds through litigation. ECF No. [50] at 7.

Emuna previously filed a motion for summary judgment, ECF No. [27], which this Court denied as it was "without an adequate basis to determine whether the Policies are applicable" and whether there was a dispute of material fact "regarding Nautilus' duty to defend and/or indemnify Emuna." ECF No. [34] at 11. This Court did find as a matter of law that Emuna is an additional insured under Policy number NN1087682 and policy number NN1254993 (the "Policies"). ECF No. [34] at 7-9.

Following the discovery period, Emuna filed the present Motion for Summary Judgment, ECF No. [50]. Emuna seeks summary judgment on its Breach of Contract Counterclaim and on all claims brought by and against it. *Id.* Emuna sets forth the following grounds:

1. Pinnacle's faulty work caused property damage beyond the work performed by Pinnacle, triggering coverage;

2. Nautilus has a duty to defend and indemnify Emuna from the claims brought against it by BCD;

3. The exclusions asserted by Nautilus do not bar coverage; and

4. Alternatively, Nautilus has a duty to continue to defend Pinnacle in the Underlying Action.

Nautilus filed its Motion for Summary Judgment, ECF No. [51], seeking judgment as follows:

1. The Residential Construction Operations Exclusion bars coverage for claims arising from the Project;

2. Nautilus has no duty under the Policies to defend Pinnacle against the claims and damages sought in the Underlying Action;

3. Nautilus has no duty under the Policies to indemnify Pinnacle against the claims and damages sought in the Underlying Action;

4. Nautilus has no duty under the Policies to defend Emuna against any claim against it asserted by BCD arising out of work performed by Pinnacle on or at the Project; and

5. Nautilus has no duty under the Policies to indemnify Emuna against any claim against it asserted by BCD arising out of work performed by Pinnacle on or at the Project.

The Motions are ripe for consideration.

## A. Material Facts

The following material facts are undisputed unless otherwise noted.

### 1. The Project

At all relevant times, BCD Dania Oaks, LLC ("BCD") was the owner of the Property at 5461 SW 40th Avenue, Dania Beach, FL 33314. DSMF ¶ 11; ODSMF ¶ 11. Emuna contracted with BCD to construct a townhome project at the Property, called the "Oaks Place Project"

("Project") which Emuna was legally responsible to deliver free and clear of any defects. DSMF ¶ 12; ODSMF ¶ 12. Emuna contracted with BCD to construct and serve as general contractor for the Project. DSMF ¶¶ 11, 12; ODSMF ¶¶ 11, 12.

The Project contains eighteen detached townhome structures and one detached clubhouse. DSMF ¶ 15; ODSMF ¶ 15. It is disputed whether the Project consists of fifty-seven townhome units within the eighteen detached structures. PSMF ¶ 10; OPSMF ¶ 10.

Emuna and Pinnacle entered into a subcontract ("Subcontract") whereby Pinnacle was to perform the underground utility construction for the Project. DSMF ¶ 16; ODSMF ¶ 16.

### 2. The Policies and Endorsement Exclusion

The Subcontract required Pinnacle to secure and maintain commercial general liability insurance to cover Pinnacle's legal liability, and to name Emuna as an additional insured for liability arising out of operations performed under the Subcontract. DSMF ¶¶ 17, 18; ODSMF ¶¶ 17, 18. Nautilus issued Pinnacle policy numbers NN1087682 and NN1254993 (together, the "Policies"). ECF Nos. [1-6], "Exhibit D"; ECF No. [1-7], "Exhibit E" The Policies provided commercial general liability insurance for the periods of January 23, 2020 to January 23, 2021, and April 22, 2021, to September 18, 2021, respectively. *Id*.; *See also* PSMF ¶ 1; OPSMF ¶ 1.

The Policies' Insuring Agreement for Coverage A - Bodily Injury and Property Damage Liability Coverage provides, in pertinent part:

SECTION I – COVERAGES COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY

> 1. Insuring Agreement
>
>> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any

"suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.

b. This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

(2) The "bodily injury" or "property damage" occurs during the policy period;

SECTION V – DEFINITIONS

17."Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

ECF No. [1-6] at 12, 24, 26; ECF No. [1-7] 14, 26, 28.

The Policies are subject to an Endorsement, "Coverage Limitation and Exclusion – Residential Construction Operations" ("Endorsement Exclusion"). PSMF ¶ 4; OPSMF ¶ 4. The Endorsement Exclusion, in pertinent part, is as follows:

COVERAGE LIMITATION AND EXCLUSION – RESIDENTIAL CONSTRUCTION OPERATIONS

A. The following exclusion is added to 2. Exclusions of Section I - Coverage A - Bodily Injury And Property Damage Liability

This insurance does not apply to:

1. "Bodily injury", "property damage", "personal and advertising injury" or medical payments arising out of, resulting from, related to, or in any way connected with, either directly or indirectly, your ongoing operations, "your product", or "your work" performed by or on behalf of any insured, either prior to or during the policy period, that is incorporated into or performed at any of the following construction projects:

a. Any new townhouse or residential condominium project where the total number of individual residential units is greater than

twenty-five (25), regardless of the number of buildings, developments, phases or associations;

b. Any new residential housing project (also known as a Planned Unit Development (PUD) or tract housing), where the total number of "residential housing units" is greater than twenty-five (25), regardless of the number of buildings, developments, phases or associations;

B. The following definition is added to the Definitions section:

"Residential housing units" means detached single family or multiple family dwellings, duplexes, triplexes, dormitories or any other housing or dwelling built or used, in whole or in part, for the purpose of residential occupancy. For the purpose of this endorsement, each duplex will be considered two residential housing units, each triplex will be considered three residential housing units, and so forth. "Residential housing units" does not mean apartments.

ECF No. [1-6] at 45; ECF No. [1-7] at 45. *See also* DSMF ¶ 6; OPSMF ¶ 6.

The term "individual residential units" is not defined in the Policies. PSMF ¶ 5; OPSMF ¶ 5. Emuna is an additional insured under the Policies. PSMF ¶ 29; OPSMF ¶ 29.

### 3. **Events After the Faulty Work was Discovered**

Emuna alleges Pinnacle provided faulty work resulting in the following: an abandonment by Pinnacle; defective work by Pinnacle causing leaks throughout the Project; punctures in the water line causing leaks; fernco coupling wrongfully used to connect sections of the sewer systems causing leaks; lateral connections improperly terminated; lateral connections improperly sealed, laterals not properly connected and causing further leaks; faulty installation of equipment causing leaks in manholes; unsealed manholes; faulty installation of the water line; leaks throughout the water lines and sewer systems installed by Pinnacle; problems encountered by BCD; damage to the Property's water line and sewer system installed by Pinnacle; and damage to the Property's pavers, plumbing lines, sidewalks, and lime rock not installed by Pinnacle. DSMF ¶¶ 21-24. Nautilus disputes the assertions, but does not dispute that those are allegations made by Emuna against Pinnacle. ODSMF ¶¶ 21-24.

BCD sent Emuna a demand letter for $1,247,023.57 for damages resulting from Pinnacle's work. DSMF ¶ 27; ODSMF ¶ 27. Emuna asserted in its Counterclaim it was liable to BCD for the damage to the Property, but that it is entitled to coverage under the Policies. PSMF ¶ 10; OPSMF ¶ 10. Emuna thereafter filed the Underlying Action, CACE22010941, styled *Emuna Construction, LLC v. Pinnacle Engineering & Development, Inc*. DSMF ¶ 10; ODSMF ¶ 10.

## II.   LEGAL STANDARD

### A.  Summary Judgment

A court may grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The parties may support their positions by citations to materials in the record, including depositions, documents, affidavits, or declarations. *See* Fed. R. Civ. P. 56(c). "A factual dispute is 'material' if it would affect the outcome of the suit under the governing law, and 'genuine' if a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986)).

A court views the facts in the light most favorable to the non-moving party, draws "all reasonable inferences in favor of the nonmovant and may not weigh evidence or make credibility determinations[.]'" *Lewis v. City of Union City, Ga.*, 934 F.3d 1169, 1179 (11th Cir. 2019); *see also Crocker v. Beatty*, 886 F.3d 1132, 1134 (11th Cir. 2018) ("[W]e accept [the non-moving party's] version of the facts as true and draw all reasonable inferences in the light most favorable to him as the non-movant." (citation omitted)).

"The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which a jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252. The moving party shoulders the initial burden of

showing the absence of a genuine issue of material fact. *Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008). Once this burden is satisfied, "the nonmoving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Ray v. Equifax Info. Servs., L.L.C.*, 327 F. App'x 819, 825 (11th Cir. 2009) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)). Instead, "the non-moving party 'must make a sufficient showing on each essential element of the case for which he has the burden of proof.'" *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). Accordingly, the non-moving party must produce evidence, going beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designating specific facts to suggest that a reasonable jury could find in the non-moving party's favor. *Shiver*, 549 F.3d at 1343. Even "where the parties agree on the basic facts but disagree about the factual inferences that should be drawn from those facts," summary judgment may be inappropriate. *Warrior Tombigbee Transp. Co., Inc. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir. 1983).

"If more than one inference could be construed from the facts by a reasonable fact finder, and that inference introduces a genuine issue of material fact, then the district court should not grant summary judgment." *Bannum, Inc. v. City of Fort Lauderdale*, 901 F.2d 989, 996 (11th Cir. 1990) (citation omitted).

### B.  Florida Law Governs

When federal jurisdiction is based on diversity of citizenship under 28 U.S.C § 1332(a)(2), and when an insurance policy is issued in Florida, the substantive law of Florida applies. Diversity jurisdiction exists in this matter pursuant to 28 U.S.C. § 1332(a) as Nautilus is an Arizona based entity with its principal place of business in Scottsdale, Arizona. Both Emuna and Pinnacle are Florida based entities, and the amount in controversy exceeds $75,000.00. 28 U.S.C. § 1332(a); ECF No. [1] at 2. Therefore, federal procedural rules and Florida state substantive law applies. 28

U.S.C. § 1652; *See Global Quest, LLC v. Horizon Yachts, Inc.*, 849 F.3d 1022, 1027 (11th Cir. 2017) ("As a federal court sitting in diversity jurisdiction, we apply the substantive law of the forum state, in this case Florida, alongside federal procedural law." (citing *Horowitch v. Diamond Aircraft Indus., Inc.*, 645 F.3d 1254, 1257 (11th Cir. 2011)).

### C.  Evaluation of an Insurance Policy

An insurer's duty to defend arises from the insurance contract and policy. *See Allstate Ins. Co. v. RJT Enters., Inc.*, 692 So. 2d 142, 144 (Fla. 1997) ("[I]f there is no contractual duty to defend in the parties' contract then there is no duty to defend."). That is, an insurer's duties toward its insured arise from the legal effects of the relevant policy provisions. *See Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Brown*, 787 F. Supp. 1424, 1427 (S.D. Fla. 1991). Therefore, "summary judgment is appropriate in declaratory judgment actions seeking a declaration of coverage when the insurer's duty, if any, rests solely on the applicability of the insurance policy, the construction and effect of which is a matter of law." *Northland Cas. Co. v. HBE Corp.*, 160 F. Supp.2d 1348, 1358 (M.D. Fla. 2001) (citing *Talat Enters., Inc. v. Aetna Life & Cas.*, 952 F. Supp. 773 (M.D. Fla. 1996)). "An insurer's duty to indemnify is narrower than its duty to defend and must be determined by analyzing the policy coverages in light of the actual facts in the underlying case." *Sinni v. Scottsdale Insurance Co.*, 676 F. Supp. 2d 1319, 1323 (M.D. Fla. 2010) (citing *State Farm Fire & Cas. Co. v. CTC Dev. Corp.*, 720 So. 2d 1072, 1077 n. 3 (Fla. 1998) and *Hagen v. Aetna Cas. & Sur. Co.*, 675 So. 2d 963, 965 (Fla. 5th DCA 1996)).

"Under Florida law, an insurance policy is treated like a contract, and therefore ordinary contract principles govern the interpretation and construction of such a policy." *Pacific. Emp'rs Ins. Co. v. Wausau Bus. Ins. Co.*, No. 3:05-cv-850-J-32TEM, 2007 WL 2900452, at *4 (M.D. Fla. Oct. 2, 2007) (citing *Graber v. Clarendon Nat'l Ins. Co.*, 819 So. 2d 840, 842 (Fla. 4th DCA 2002)). As with all contracts, the interpretation of an insurance contract — including determining

whether an insurance provision is ambiguous—is a question of law to be determined by the court. *Id*.; *Travelers Indem. Co. of Illinois v. Hutson*, 847 So. 2d 1113 (Fla. 1st DCA 2003) (stating that whether an ambiguity exists in a contract is a matter of law).

### D.  Contract Determined by its Plain Meaning

"Under Florida law, insurance contracts are construed according to their plain meaning." *Garcia v. Fed. Ins. Co.*, 473 F.3d 1131, 1135 (11th Cir. 2006) (quoting *Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co.*, 913 So. 2d 528, 532 (Fla. 2005)). The "terms of an insurance policy should be taken and understood in their ordinary sense and the policy should receive a reasonable, practical and sensible interpretation consistent with the intent of the parties-not a strained, forced or unrealistic construction." *Siegle v. Progressive Consumers Ins. Co.*, 819 So. 2d 732, 736 (Fla. 2002) (quoting *Gen. Accident Fire & Life Assurance Corp. v. Liberty Mut. Ins. Co.*, 260 So. 2d 249 (Fla. 4th DCA 1972); *see also Gilmore v. St. Paul Fire & Marine Ins.*, 708 So. 2d 679, 680 (Fla. 1st DCA 1998) ("The language of a policy should be read in common with other policy provisions to accomplish the intent of the parties."). However, if there is more than one reasonable interpretation of an insurance policy, an ambiguity exists and it "should be construed against the insurer." *Pacific. Emp'rs Ins.*, 2007 WL 2900452, at *4 (citing *Purrelli v. State Farm Fire & Cas. Co.*, 698 So. 2d 618, 620 (Fla. 2d DCA 1997)).

A coverage clause is generally interpreted as broadly as possible to ensure the greatest amount of insurance coverage. *Id*. at *5 (citing *Westmoreland v. Lumbermens Mut. Cas. Co.*, 704 So. 2d 176, 179 (Fla. 4th DCA 1997)). To determine the parties' contractual intent, a court may only consider the language in the insurance policy, unless the policy is ambiguous. *Fireman's Fund Ins. Co. v. Tropical Shipping & Constr. Co., Ltd.*, 254 F.2d 987, 1003 (11th Cir. 2001) (citing *Towne Realty v. Safeco Ins. Co. of Am.*, 854 F.2d 1264, 1267 (11th Cir. 1988)). "As a general rule, in the absence of some ambiguity, the intent of the parties to a written contract must be ascertained

from the words used in the contract, without resort to extrinsic evidence." *Id.* (quoting *Lee v. Montgomery*, 624 So. 2d 850, 851 (Fla. 1st DCA 1993)).

### E.  Declaratory Judgment

The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction. . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Am. Ins. Co. v. Evercare Co.*, 430 F. App'x 795, 798 (11th Cir. 2011) (quoting *GTE Directories Pub. Corp. v. Trimen Am., Inc.*, 67 F.3d 1563, 1567 (11th Cir. 1995)).

### III.  DISCUSSION

Both Parties contend the undisputed facts establish their entitlement to judgment as a matter of law. Emuna argues the undisputed facts show Pinnacle's faulty work caused damage to the Property triggering coverage by Nautilus, and Nautilus has a duty to defend and indemnify Emuna for the related claims brought against it by BCD. Emuna also argues that the Endorsement Exclusion contained in the Policies is ambiguous and therefore cannot apply as a matter of law. Moreover, Emuna argues the Endorsement Exclusion is not applicable to Emuna through its allegation that Nautilus considers the Project an apartment project rendering it unaffected by the Endorsement Exclusion. Alternatively, Emuna contends that Nautilus has a duty to continue to defend Pinnacle in the Underlying Action.

Nautilus contends that the undisputed facts instead demonstrate the Endorsement Exclusion is unambiguous, applicable to the claims and to each Defendant, and the Endorsement

Exclusion bars any duty to defend related to the claims in the Underlying Action. Nautilus also asserts that the affirmative defenses alleged by Emuna and Pinnacle are without merit, and Nautilus is entitled to judgment as a matter of law.

### A. The Exclusion Applies to the Project

The Parties do not dispute that the Policies contain the Endorsement Exclusion which precludes coverage for certain construction projects. The Parties also do not dispute that the Policies have no definition for the term "individual residential units."

### 1. Section A.1.a. is Not Ambiguous

Emuna argues the Endorsement Exclusion, Section A.1.a, is ambiguous, and should therefore be read in its favor. Section A.1.a excludes coverage for:

> Any new townhouse or residential condominium project where the total number of individual residential units is greater than twenty-five (25), regardless of the number of buildings, developments, phases or associations.

> ECF No. [1-6] at 45.

Emuna reasons that the term "individual residential units" is ambiguous because it is undefined in the Policies, and Nautilus' Corporate Representative failed to define the term during his deposition. ECF No. [50] at 8; Coffey Dep. 94:6-14, ECF No. [49-1]. Emuna argues the definition for a "facially similar term – 'Residential housing units'" in the following subsection of the Endorsement Exclusion, highlights this inherent ambiguity. ECF No. [50] at 9. Section A.1.b excludes coverage for:

> Any new residential housing project (also known as a Planned Unit Development (PUD) or tract housing), where the total number of "residential housing units" is greater than twenty-five (25), regardless of the number of buildings, developments, phases or associations. ECF No. [1-6] at 45.

> "Residential housing units" as appears in § A.1.b. is defined as follows:
> Residential housing units means detached single family or multiple family dwellings, duplexes, triplexes, dormitories or any other housing or dwelling built or used, in whole or in part, for the purpose of residential occupancy.

13

> For the purpose of this endorsement, each duplex will be considered two residential housing units, each triplex will be considered three residential housing units, and so forth. "Residential housing units" does not mean apartments. ECF No. [1-6] at 45.

As this definition covers detached units, and the Project is comprised of eighteen detached units, Emuna argues this is material. Emuna contends different reasonable definitions are possible, creating ambiguity such that the policy should be read in its favor. ECF No. [50] at 9.

Nautilus responds that the language in the Endorsement Exclusion is plain and unambiguous. ECF No. [55] at 11. First, Nautilus contends the lack of a definition for "individual residential units" does not create an ambiguity because, according to Florida law, undefined terms must be read by their plain and ordinary meaning. *Id*. at 7. For support, Nautilus cites to *Garcia v. Fed. Ins. Co.*, 969 So. 2d 288, 292 (Fla. 2007) and *Barcelona Hotel, LLC v. Nova Cas. Co.*, 57 So. 3d 228, 230-31 (Fla. 3d DCA 2011). Moreover, regarding the alleged ambiguity through a "facially similar" term that is defined, Nautilus maintains its policy is clear: only "words and phrases that appear in quotation marks have special meaning." ECF No. [1-6] at 12. As to Emuna's assertion that Nautilus' Corporate Representative failed to provide a definition for "individual residential units," Nautilus points out that Emuna's claim is "misleading" and contrary to the record testimony; the Corporate Representative merely confirmed that the term is not defined and correctly stated the term should therefore be construed by its plain meaning. *Id*. Nautilus further argues that the unambiguous language in the Endorsement Exclusion bars coverage "relative to any of the insured" — Emuna or Pinnacle. ECF No. [51] at 8.

Emuna replies that the term "individual residential units" is not commonly used, which is why Nautilus' own Corporate Representative could not define the term. ECF No. [57] at 5. Coffey Dep. 94:11 – 95:11, ECF No. [49-1**]**.

The "failure to define a term involving coverage does not necessarily render the term ambiguous." *Barcelona Hotel, LLC v. Nova Cas. Co*., 57 So. 3d 228, 230 (Fla. 3d DCA 2011).  In Florida, when a term is undefined in an insurance policy, the term is to be "given [its] plain and ordinary meaning." *Id*. (citations omitted). To find in favor of the insured due to an ambiguity in an insurance contract, "the policy must actually *be* ambiguous." *Penzer v. Trasnp. Ins. Co*., 29 So. 3d 1000, 1005 (Fla. 2010) (emphasis in original) (quoting *Garcia v. Federal Ins. Co.,* 969 So. 2d 288, 291 (Fla. 2007)). Therefore, the necessary determination is the plain and ordinary meaning of the undefined term "individual residential unit" in the Endorsement Exclusion.

As an initial matter, Nautilus's Corporate Representative did not give an official definition of the term "individual residential unit" because, as he correctly observed, and undisputed in this case, that term "is not defined under the policy." Coffey Dep. 94:14, ECF No. [49-1]. Consistent with controlling Florida law, Coffey discussed the plain language of the policy in this way:

> It's a plain language of what's written in the endorsement. . . . Because that's the plain language of the endorsement, the way Nautilus reads it, and the way that we see that this endorsement and the spirit of the endorsement means . . . . Because individual [is] not specifically defined under this endorsement. . . the way it's used in the sentence is to say that where any number of individual residential units is greater than 25, regardless the number of buildings. *Id*. 94:2-3; 95:3-14.

Therefore, Emuna's argument is misplaced. Nautilus does not need to provide a definition as every term in a contract need not be defined. *Barcelona Hotel* 57 So. 3d at 231. Instead, the Corporate Representative correctly considered a plain language reading of the term "independent residential unit" upon confirming that the term was not explicitly defined. Alternatively, Emuna argues the case law Nautilus relied on also failed to cure the ambiguity as those cases "did not involve the ambiguous term 'individual residential unit'" nor define "the similar term 'residential housing unit.'" ECF No. [57] at 6.

As "Florida courts have said again and again. . . 'insurance contracts must be construed in accordance with the plain language of the policy.'" *Sphinx Intern., Inc. v. National Union Fire Ins. Co. of Pittsburgh, Pa*., 412 F.3d 1224, 1227 (11th Cir. 2005) (quoting *Swire Pac. Holdings, Inc. v. Zurich Ins. Co.*, 845 So. 2d 161, 165 (Fla. 2003)).

However, in Florida, "exclusionary provisions which are. . . susceptible to more than one meaning must be construed in favor of the insured.'" *Id*. (quoting *State Farm Mut. Auto. Ins. Co. v. Pridgen*, 498 So. 2d 1245, 1248 (Fla. 1986)). For cases involving exclusions to insurance contracts, this rule is to be read more clearly in favor of an insured *if* "'a genuine inconsistency, uncertainty, or ambiguity in meaning remains after resort to the ordinary rules of construction" *Id*. (quoting *Excelsior Ins. Co. v. Pomona Park Bar & Package Store,* 369 So. 2d 938, 942 (Fla. 1979)). Therefore, "courts should not strain to find ambiguity. . . if there is no genuine ambiguity, there is no reason to bypass the policy's plain meaning." *Id*. (citations omitted).

*Sphinx Intern., Inc. v. National Union Fire Ins. Co. of Pittsburgh, Pa*., 412 F.3d 1224 (11th Cir. 2005) is instructive. In *Sphinx*, the Eleventh Circuit reviewed an insurance policy under Florida law to determine whether an officer was "duly elected." *Id*. at 1227. The *Sphinx* court held it was not determinative that the insurance policy did not expressly define the term and applied the ordinary dictionary definition to the term "duly." *Id*. The Eleventh Circuit affirmed the district court's use of Webster's dictionary to determine the plain meaning of the term, stating the "district court's reasoning [was] spot on." *Id*. at 1228. The *Sphinx* court noted this approach "has substantial support in Florida case law, which often uses dictionaries to define the plain meaning of words in insurance contracts." *Id*. (citing *Deni Assocs. of Florida, Inc., v. State Farm Fire & Cas. Ins. Co*., 711 So. 2d 1135, 1139 (Fla. 1998)); *see also Pridgen*, 498 So. 2d at 1248.

Case No. 22-cv-62300-BLOOM/Valle

Similarly, in *Penzer v. Trasnp. Ins. Co*., 29 So. 3d 1000, 1005 (Fla. 2010), the Florida Supreme Court held the "first step towards discerning the plain meaning of [a] phrase is 'to consult references commonly relied upon to supply the accepted meaning of the words.'" 29 So. 3d at 1005 (alterations omitted) (quoting *Garcia*, 969 So. 2d at 292) (citations omitted). As in *Sphinx*, the *Penzer* court referred to Webster's Third New International Dictionary (1981), and proceeded to analyze the terms "publication," "material," and "right." *Id*. With those definitions and noting the term "right" required a legal definition, the Florida Supreme Court then applied the resultant "plain meaning analysis" to the facts of the case. *Id*. at 1007.

Consistent with Florida law, providing a "plain meaning analysis" for the term "individual residential units" indicates a thing intended for one person, existing as a distinct entity and indivisible whole (individual), to be used as a residence (residential), which is a part of a whole (unit).[3] *Webster's Third New International Dictionary* (1981).

This plain meaning analysis comports with the testimony and the clause itself. The individual nature of the units is established given the testimony that fifty-seven units were sold, the Project was advertised as a fifty-seven project, and the units were individually "permitted and sold" with warranty deeds. Coffey Dep. 29:13-14; 23-25; 144:8-9; and 102:3-9, ECF No. [49-1]. Next, this plain meaning analysis is also logical when analyzing the second clause of § A.1.a., excluding townhouse projects "where the total number of individual residential units is greater than twenty-five (25), *regardless of the number of buildings, developments, phases, or associations*." ECF No. [1-6] at 45 (emphasis added). Emuna concedes that the eighteen detached

---

[3] The definitions are specifically: Individual: intended for one person an individual serving; existing as a distinct entity; existing as an indivisible whole (ignoring human, personal characteristics); Residential: used as a residence or by residents (ignoring medical and student facilities); Unit: a single thing, person, or group that is a constituent of a whole (ignoring definitions related to scientific measurement, military units, mathematical calculations). *Webster's Third New International Dictionary (1981)*.

townhomes are divisible: "it was blatantly obvious that the Oaks Place Townhomes would total over 25 units if both attached and detached units were counted." ECF No. [53] at 11. It is noteworthy that, in its Opponent Statement of Material Facts, Emuna states the Project "consists of 57 units of both attached and detached are included." OPSMF ¶ 10.

Moreover, the Endorsement Exclusion clearly contemplates that the number of residential units may differ from the total number of buildings in the clause "regardless of the number of buildings." ECF No. [1-6] at 45. Emuna's contention that the Project consists of eighteen detached buildings is simply not the end of the inquiry or determinative — the number of units within the eighteen detached structures is determinative of whether a project is excluded under § A.1.a. Accordingly, Emuna has failed to establish that the Endorsement Exclusion is ambiguous under Florida law. Conversely, Nautilus as movant on this same issue, has met its burden that the Endorsement Exclusion is *un*ambiguous and, therefore, entitled to summary judgment.

### 2.  **The Endorsement Exclusion Applies and Bars Coverage**

Nautilus contends that the Project consists of fifty-seven townhome units. ECF No. [1] ¶¶ 17, 29. Emuna has disputed or denied the number of townhome units. *Compare* ODSMF ¶ 34 "The project consists of 57 townhome units,." *with* RDSMF ¶ 34 "Disputed. The Oak Pace Project contains 18 detached townhome units and a detached clubhouse." *Compare* the Complaint, ECF No. [1] ¶ 17 "The project consists of 57 townhome units," *with* Emuna's Answer and Affirmative Defenses, denying the Project consisted of fifty-seven townhome units. OPSMF ¶ 17.

As referenced in the prior section, Emuna later conceded "it was blatantly obvious that the Oaks Place Townhouses would total over 25 units if both attached and detached units were counted." ECF No. [53] at 11; *see also* OPSMF ¶ 10. Furthermore, during the deposition of Nautilus' Corporate Representative, it was openly discussed that the Project is comprised of fifty-seven units. *See generally* Coffey Dep., ECF No. [49-1]. Coffey testified that, to learn about the

Project, he visited the website which indicated it was comprised of fifty-seven units. *Id*. 29:8-14, 23-25. Coffey was later asked when Nautilus "came to the determination that there were more than 25 units" Coffey replied, "the project is openly advertised as a 57-unit, townhome [sic]." *Id*. 145:3-9. However, Coffey indicated Nautilus obtained evidence necessary to proceed with the Exclusion based upon containing fifty-seven units "[a]s discovery progressed" which came after Nautilus decided to defend Pinnacle in state court. *Id*. 144.

There is no record evidence to dispute that the Project consisted of fifty-seven units and eighteen detached townhouses. Based on a plain meaning analysis of the undefined term "independent residential units" and the record in this case, the term is unambiguous, the Endorsement Exclusion applies to the Project, and the Project is not covered by Nautilus. Therefore, Emuna's Counterclaim for Breach of Contract fails as the Endorsement Exclusion bars coverage and therefore Nautilus did not breach. Moreover, the work Pinnacle conducted was for underground utilities for the Project, the work was done for the Project, incorporated into the Project, and at the Property pursuant to its subcontract with Emuna. Therefore, Pinnacle's work is also barred by the Endorsement Exclusion as § A.1.a. excludes "'property damage' arising out of, resulting from, related to, or in any way connected with, either directly or indirectly. . . incorporated into or performed at" what this Court has determined to encompass the Project. ECF No. [1-6] at 45. The Subcontract establishes that Pinnacle contracted with Emuna to perform work at the Property and that it agreed to perform work for the Project. ECF No. [17-1] at 2. Additionally, the Subcontract establishes Pinnacle assumed "entire responsibility and liability.. . for any and all damage. . . of any kind. . . growing out of or resulting from the execution of the Work provided for in this Contract." *Id*. at 8. Therefore, the record establishes Pinnacle's work was conducted at the Property and performed at and incorporated into the Project and the

Endorsement Exclusion applies to Pinnacle. Nautilus has met its burden to show the absence of a genuine issue of material fact and, absent any viable affirmative defenses, Nautilus is entitled to summary judgment.

### 3. **The Doctrine of the Last Antecedent Does Not Apply**

Emuna argues the Endorsement Exclusion within § A.1.a. should be interpreted in its favor under the doctrine of the last antecedent. Emuna argues the modifier in § A.1.a. "where the total number of individual residential units is greater than twenty-five (25)" only applies to "residential condominium projects" and not "townhouses" because there is no comma separating the modifier ("greater than twenty-five") from the immediately preceding noun ("residential condominium projects"). ECF No. [50] at 10. Emuna states it is undisputed that its Project involves townhouses not condominiums. *Id*.; *see* DSMF ¶¶ 14, 15. Therefore, Emuna contends the Endorsement Exclusion § A.1.a. does not apply under the doctrine of the last antecedent. ECF No. [50] at 10.

Nautilus responds the doctrine of the last antecedent is only appropriate when contractual language is ambiguous. ECF No. [55]; s*ee Andean Life, LLC v. Barry Callebaut U.S.A., LLC*, NO. 20-20765-CIV, 2021 WL 9563176, at *6 (S.D. Fla. Sept. 29, 2021). Nautilus cites to *Penzer*, 29 So. 3d 1000, and argues that the Florida Supreme Court has expressly held  that the doctrine of the last antecedent cannot be applied in a way that ignores the plain reading of the contract's language. Emuna replies "exclusions are to be construed liberally in favor of the insured. . . the last antecedent cannon of construction applies." ECF No. [57] at 7.

This Court has determined the language in § A.1.a. is unambiguous. For that reason, the doctrine of the last antecedent does not apply and cannot advance Emuna's argument. In Florida, "resort to the rules of construction is permissible only where the contractual language is ambiguous." *Miller v. Kase*, 789 So. 2d 1095, 1097-99 (Fla. 4th Dist. Ct. App. 2001)); *see also Herring v. First Southern Ins. Co.*, 522 So. 2d 1066, 1068 (Fla. 1st DCA 1988) ("Courts may apply

rules of construction to contracts of insurance only when the policy language is indefinite, ambiguous or equivocal.") (quoting *United States Fire Insurance Company v. Morejon*, 338 So. 2d 223 (Fla. 3d DCA 1976)). Moreover, both the United States Supreme Court and the Florida Supreme Court have held "the doctrine of the last antecedent is not an absolute rule." *Penzer*, 29 So. 3d at 1007 (quoting *U.S. v. Hayes*, 555 U.S. 415, 426 (2009)). Accordingly, the Court rejects Emuna's argument as the contractual language is unambiguous.

### B. The Project Does Not Qualify as an Apartment

Alternatively, Emuna argues the Project is technically an "apartment project" for purposes of the Endorsement Exclusion, and apartments are not excluded under § A.1.a. ECF No. [50] at 11. Emuna finds support in Nautilus' Corporate Representative who testified that the Project is not considered an apartment "[b]ecause they are not individually owned." Coffey Dep. 102:1-3, ECF No. [49-1]. However, Emuna argues it is undisputed that the Project was owned entirely by one owner, BCD, at the time of the claim; the first unit was not transferred to a third-party owner until April 2023. ECF No. [50] at 12. Therefore, the Project was "an apartment project as defined by Nautilus and the Endorsement does not apply." *Id.*

Nautilus responds that this argument is "blatantly contradictory to an undisputed fact" and fails as a matter of law. ECF No. [55] at 12. Nautilus points to several briefings in this action where Emuna states the Project is a townhome Project. Furthermore, Nautilus argues the case law Emuna relies on is distinguishable, not binding in this Court, and applies the wrong law. *Id.* Emuna replies that "Nautilus' Corporate Representative clearly establishes that at all material times this was an apartment project for purposes of the Policies." ECF No. [57] at 7. Emuna argues that since the Property was owned solely by BCD at all material times, the Project was therefore an apartment project, and the Endorsement Exclusion does not apply. *Id.*

Summary judgment can only be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Emuna shoulders the initial burden of showing the absence of a genuine issue of material fact. *Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008). "A factual dispute is 'material' if it would affect the outcome of the suit under the governing law, and 'genuine' if a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)). Emuna fails to meet its burden to show this portion of the deposition results in an absence of a genuine issue of material fact. Immediately after the testimony Emuna relies upon to argue the Project is an apartment project for purposes of the exclusion, the Corporate Representative testified:

> Q. Okay. So, if the Oaks Place town homes was really 250 apartments, would it be covered by this?
> A. It would not be excluded.
> Q. It would not be excluded.
> A. In this endorsement.
>
> Q. Okay. And what's the difference between an apartment and a townhouse?
> A. Ownership.
> Q. Ownership. Okay. And what is it -- what do you mean by that?
> A. Well, a townhouse could be individually titled or generally apartments, if they're under one ownership umbrella, they're not.
>
> Q. Well, okay. I guess, then my question is, why is the Oaks Place Town Homes project not considered apartments?
> A. Because they're individually owned.
> Q. Okay
> A. And they're townhouses, they were permitted and sold that way.
> Q. And how do you know that?
> A. Because there's warranty deeds that were issued on this. [sic]

Coffey Dep. at 101:3:10; 20-25; 102:1-9, ECF No. [49-1].

The testimony establishes that these are townhouses individually titled and are not apartments for purposes of the Policies. Coffey reiterates this when he states the Project is not

considered an apartment because the townhomes were individually permitted and sold individually, as townhouses. As Nautilus correctly points out, Emuna has consistently identified the project as a townhome project. In the Underlying Action, Emuna's Complaint against Pinnacle alleges "[o]n or about July 10, 2019, Emuna contracted with BCD to construct a townhome development." ECF No. [1-5] ¶ 6. Moreover, Emuna has not provided any record evidence that the relevant permits or deeds could allow the townhouse project to be considered an apartment project. Finally, the Endorsement Exclusion only indicates that the defined term "residential housing units" does not mean apartments; there is no such apartment exception for the relevant term, "individual residential units." Emuna would therefore need to establish that the apartment exclusion as applied to "residential housing units" applies also to individual residential units, which it did not address.

Emuna's reliance *Ment Bros. Iron Works Co., Inc. v. Interstate Fire & Cas. Co*., 702 F.3d 118 (2nd Cir. 2012) in equally unavailing. *Ment* applies the laws of New York. In this district, courts have relied on *Ment* when choice of law requires application of New York law. *See Hunter v. AIG Property Cas. Co*., No.17-81020, 2018 WL 11252160, *3 (S.D. Fla. Jan. 22, 2018); *see also Great Lakes Ins. SE v. Wave Cruiser, LLC*, 499 F. Supp. 1191, 1198 (S.D. Fla. Nov. 2, 2020). Emuna relies on *Ment* to support its argument that the Project is an apartment project based on ownership at the time the damage occurred. In *Ment*, the Second Circuit addressed whether an insurance policy excluding damages arising out of the construction of 'residential properties' except apartments applied to the construction at issue. *Ment*, 702 F.3d at 120. The Second Circuit held the project was an apartment based on the definitions in the contract. *Id*. at 123. However, there were additional considerations that are not present here. First, qualifying language existed in that contract "support[ing] the view that an apartment is not a condominium until after

conversion." *Id*. Second, New York has specific condominium laws. There, courts have held "[w]ithout a 'valid and existing condominium declaration,' a condominium's existence is not recognized at law.'" *Id*. (quoting *Local 798 Realty Corp. v. 152 W. Condo.*, 37 AD3d 239, 240 [1st Dept 2007]). The record evidence in *Ment* demonstrated the owner had not filed the requisite condominium declaration until after the relevant time, and therefore could not legally be recognized as a condominium. As such, any reliance to prove that the Project was an apartment for purposes of the exception to the Endorsement Exclusion is misplaced. Accordingly, Emuna has failed to meet its burden to show its entitlement to summary judgment that it was an apartment, and the Endorsement Exclusion does not apply.

### C. Affirmative Defenses Do Not Impose a Duty upon Nautilus

In its Motion, Nautilus argues neither Pinnacle nor Emuna sets forth affirmative defenses that have merit, and summary judgment is warranted. ECF No. [51] at 12. Pinnacle sets forth five affirmative defenses: (1) Nautilus failed to comply with Florida Statutes § 627.426; (2) the Endorsement Exclusion is ambiguous related to its underground utility work; (3) Nautilus waived any rights to contest coverage through its acts and omissions; (4) the Endorsement Exclusion does not bar coverage as its work was limited to work underground, outside of the "confines of the residential property" or residential units to which the Endorsement Exclusion applies; and (5) declaratory judgment would require resolution of fact. ECF No. [12] at 5-6. Emuna sets forth three affirmative defenses: (1) Nautilus failed to comply with Florida Statutes § 627.426; (2) ambiguities in the contract; and (3) estoppel. ECF No. [17] at 3-4.

Nautilus argues it has addressed Pinnacle's second, fourth, and fifth defenses at length (no ambiguity, Exclusion applies, and no genuine issues of material fact exists). As such, it argues that the remaining affirmative defenses of compliance with § 627.426 and waiver and estoppel are without merit. ECF No. [51] at 12 n.1.

The Court has already determined that no ambiguity exists in the Endorsement Exclusion, the Endorsement Exclusion applies to both Pinnacle and Emuna, and bars coverage for the Project. Regarding Pinnacle's fifth affirmative defense that genuine issues of fact remain, the Court disagrees. Here, there is no dispute of fact and summary judgment on the Exclusion can be determined as a matter of law. *See, Northland Cas. Co. v. HBE Corp.*, 160 F. Supp.2d 1348, 1358 (M.D. Fla. 2001) (citing *Talat Enters., Inc. v. Aetna Life & Cas.*, 952 F. Supp. 773 (M.D. Fla. 1996)). Moreover, the interpretation of an insurance contract — including determining whether an insurance provision is ambiguous—is a question of law to be determined by the court. *Pacific. Emp'rs Ins. Co. v. Wausau Bus. Ins. Co.*, No. 3:05-cv-850-J-32TEM, 2007 WL 2900452, at *4 (M.D. Fla. Oct. 2, 2007); *Travelers Indem. Co. of Illinois v. Hutson*, 847 So. 2d 1113 (Fla. 1st DCA 2003). Therefore, Pinnacle's fifth affirmative defense fails and the Court analyzes the remaining affirmative defenses.

### i. Florida Statutes § 627.426 Does Not Apply

Pinnacle raises as an affirmative defense that Nautilus' "rights and defenses are diminished" relative to Nautilus' failure to comply with Florida Statutes, § 627.426, "including with respect to its reservation of rights." ECF No. [12] at 5. Emuna also raises § 627.426 as a defense, specifically pertaining to Nautilus' failure to provide a written reservation of rights within thirty days of when it should have known or had actual knowledge of the coverage defense. ECF No. [17] at 3.

Nautilus responds that Florida Statutes, § 627.426 does not govern as Nautilus is a surplus lines carrier and therefore exempt from Chapter 627[4]. Alternatively, Nautilus argues § 627.426

---

[4] In its Motion for Summary Judgment, Nautilus incorrectly noted Chapter 626 in its quote of *Bryant v. GeoVera Specialty Ins. Co.*, 271 So. 3d 1013, 1019 n.1 (Fla. 4th CA 2019). Its Motion and discussion center on Chapter 627, and therefore no analysis of Chapter 626 is needed.

has no bearing because coverage is expressly excluded under the Policies. ECF No. [51] at 13-14.

Emuna replies that Nautilus did not introduce any evidence that it is a surplus lines carrier. ECF

No. [53] at 10. Additionally, Emuna argues if Nautilus is a surplus lines carrier, it also failed

comply with Fla. Stat. § 626.924 requiring express language to be written on any surplus lines

policy[5] and therefore cannot be excused on this basis. *Id*. Emuna failed to respond to Nautilus'

other argument that § 627.426 has no bearing on this issue given the validity of the Endorsement

Exclusion. ECF No. [53] at 10-11.

Florida Statutes, § 627.426 in relevant part states:

§ 627.426   Claims administration.

(2)   A liability insurer shall not be permitted to deny coverage based on a
particular coverage defense unless:

(a)   Within 30 days after the liability insurer knew or should have known
of the coverage defense, written notice of reservation of rights to assert a
coverage defense is given to the named insured by registered or certified
mail sent to the last known address of the insured or by hand delivery; and

(b)   Within 60 days of compliance with paragraph (a) or receipt of a
summons and complaint naming the insured as a defendant, whichever is
later, but in no case later than 30 days before trial, the insurer:

1.   Gives written notice to the named insured by registered or
certified mail of its refusal to defend the insured;

2.   Obtains from the insured a nonwaiver agreement following full
disclosure of the specific facts and policy provisions upon which the
coverage defense is asserted and the duties, obligations, and
liabilities of the insurer during and following the pendency of the
subject litigation; or

3.   Retains independent counsel which is mutually agreeable to the
parties. Reasonable fees for the counsel may be agreed upon
between the parties or, if no agreement is reached, shall be set by the
court.

---

[5] Fla. Stat. § 626.924, "information required on contract" THIS INSURANCE IS ISSUED
PURSUANT TO THE FLORIDA SURPLUS LINES LAW. PERSONS INSURED BY SURPLUS LINES
CARRIERS DO NOT HAVE THE PROTECTION OF THE FLORIDA INSURANCE GUARANTY ACT
TO THE EXTENT OF ANY RIGHT OF RECOVERY FOR THE OBLIGATION OF AN INSOLVENT
UNLICENSED INSURER.

Regarding Nautilus' status as a surplus lines carrier, the Court agrees with Emuna. Nautilus asserts that its status can be "readily determined" from the Policies and Florida's Office of Insurance Regulation Website and is permitted to transact business in Florida pursuant to the Florida Surplus Lines Law, § 626.913. ECF No. [51] at 13; ECF No. [1] ¶ 1. Nautilus does not provide supportive evidence in the record, and the only reference to "surplus" in the Policies appears as a "surplus lines tax" line item. ECF No. [1-6] at 2. As Nautilus has not conclusively established it is a surplus lines carrier, its argument fails.

However, the Court has determined the Endorsement Exclusion in the Policies precludes coverage for the Project. In *AIU Ins. Co. v. Block Marina Inv., Inc.*, 544 So. 2d 998 (Fla. 1989), the Florida Supreme Court quashed and remanded a grant of summary judgment finding that an insurer was prohibited from denying coverage to an insured due to noncompliance with § 627.426. In reversing, the Florida Supreme Court held that the loss was not covered under the insurance policy. *Id*. at 998. The Florida Supreme Court held that by its express terms, § 627.426 "in effect works an estoppel" for coverage that does exist in an insurance policy. *Id*. A "coverage defense" within Fla. Stat. § 627.426(2) "means a defense of coverage that otherwise exists." *Id*. Therefore, the corollary is true and "the doctrine may not be used to create or extend coverage" that does not exist. *Id*. at 1000 (citing *Crown Life Ins. Co. v. McBride*, 517 So. 2d 660 (Fla. 1987)). As the Endorsement Exclusion applies in this matter, coverage does not exist. Accordingly, Florida Statutes § 627.426 is not a viable defense for Pinnacle or Emuna to assert that coverage exists.

### ii.   Pinnacle Failed to Establish Waiver or Estoppel

In its Answer and Affirmative Defenses, Pinnacle asserted as a defense "Plaintiff has, by its actions and/or omissions, waived any right to contest coverage." ECF No. [12] at 5. Pinnacle did not otherwise plead that Nautilus should be estopped and does not establish what harms or

prejudice it experienced. Nautilus argues this defense therefore fails as a matter of law. ECF No. [51] at 15-16. Even though Nautilus began to defend Pinnacle in the Underlying Lawsuit, it did so subject to a reservation of rights expressly permitting Nautilus to withdraw from the defense. *Id*.; *see* ECF No. [43-1].  Emuna responded that Nautilus must continue to defend Pinnacle in the Underlying Action whether or not the Endorsement Exclusion precludes coverage. ECF No. [53] at 9. Emuna argues that "even if the allegations in the Complaint are 'factually incorrect or meritless' the carrier must defend." *Id*. (quoting *U.S. Fire Ins. Co. v. J.S.U.B. Inc.*, 979 So. 2d 871 (Fla. 2007)). Emuna reasons that, as the Underlying Action does not disclose the number of units in the Project, the duty to defend is invoked. ECF No. [53] at 10. Nautilus replies it is Pinnacle's burden to prove prejudice for its equitable defense, which it cannot do. ECF No. [59] at 9.

Nautilus filed a copy of its October 24, 2022 Reservation of Rights letter ("Reservation Letter") to Pinnacle, ECF No. [43-1]. In its Reservation Letter, Nautilus explicitly states it "reserves its rights to deny coverage of the entire captioned claim under the terms, conditions, limitations, and exclusions of the Policies. . . . Nautilus reserves the right to withdraw from the defense of Pinnacle . . . if it is later determined that no coverage is owed under the Policies for this matter." *Id*. at 1-2. Therefore, Nautilus' defense was always subject to a reservation of rights.

In Florida, the doctrines of waiver and estoppel will not operate to create coverage in an insurance policy where none originally existed. *Cigarette Racing Team, Inc. v. Parliament Ins. Co.*, 395 So. 2d 1238, 1239 (4th DCA Fla. 1981) (aff'd *Doe v. Allstate Ins. Co.*, 653 So. 2d 371 (Fla. 1995)). However, there is an exception if an insured can prove (1) the insurer assumed the defense with knowledge that would have permitted it to deny coverage, and (2) untimely withdrawal of the defense prejudiced the insured. *Id*. at 1239-40. In *Doe* and *Cigarette Racing Team*, both insurers proceeded to defend the insured without a reservation. *Doe*, 653 So. 2d at 373;

*Cigarette Racing Team*, 395 So. 2d at 1239. Here, not only has Nautilus provided its Reservation Letter advising Pinnacle that it reserved its right to withdraw, but the record does not support a finding of prejudice to Pinnacle. Furthermore, Emuna has not provided authority permitting it to assert a waiver or estoppel claim on behalf of Pinnacle. Accordingly, the doctrine of waiver and estoppel is inapplicable to Emuna, and Pinnacle's third affirmative defense that Nautilus waived its right to contest coverage fails.

### iii.   Estoppel Does Not Apply to Emuna

Emuna argues it was prejudiced by Nautilus' assumption of Pinnacle's defense. ECF No. [53] at 11-12. Emuna further argues Nautilus knew of the subject claims in April 2022, inspected the Property, but "never denied coverage based on the Endorsement." *Id*. Emuna contends Nautilus improperly relies on its Reservation Letter to Pinnacle to avoid Emuna's defense of estoppel. ECF No. [11]. Nautilus responds that any prejudice can only apply to the insured, not another party. ECF No. [59] at 9.

An insurer may be estopped from denying coverage through the defense of non-coverage only if the assumption of the defense results in prejudice "to the one claiming to be insured." *Solar Time v. XL Specialty Ins. Co*., 142 Fed. App'x 430, 434 (11th Cir. 2005) (citing *Doe*, 653 So. 2d at 373). While a third party may file a bad faith claim against a liability insurer, that requires a judgment above the policy limit, and a determination that coverage exists. *Id*. (*see State Farm Fire & Cas. Co. v. Zebrowski*, 706 So. 2d 275, 277 (Fla. 1997); *see also Gen. Star Indem. Co. v. Anheuser–Busch Cos., Inc.*, 741 So. 2d 1259, 1261 (Fla. 5 DCA 1999). Emuna argues Nautilus did not deny coverage after its site visit, and based on that non-denial of coverage, Emuna proceeded to file the Underlying Action against Pinnacle and arrive at its settlement with BCD. ECF No. [53] at 12. However, Emuna has failed to establish that it was it was promised coverage for the subject

claims. At most, Emuna argues it filed the Underlying Action believing that Nautilus would defend Pinnacle, and as such, Nautilus should be estopped from ending that defense to Pinnacle because then it, Emuna, would be prejudiced. ECF No. [53] at 12. Under Florida law, Emuna cannot assert a defense of estoppel as a third party in this manner. *Doe*, 653 So. 2d at 373; *Cigarette Racing Team*, 395 So. 2d at 1239. Even if Emuna attempted to assert standing as a third-party, estoppel cannot create liability against an insurer for a loss or claim not covered in an insurance policy. *Solar Time*, 124 Fed. App'x at 434. Moreover, any perceived prejudice to Emuna is insufficient and not "prejudice to the one claiming to be insured" as required for estoppel. *Id*. Emuna has failed to establish that the defense of wavier or estoppel are proper.

### D. Declaratory Judgment is Warranted in Favor of Nautilus

Nautilus argues it has no duty to defend Emuna or Pinnacle as the Endorsement Exclusion bars coverage for the Project. Nautilus argues Florida law does not impose a duty to defend given the validity of the Endorsement Exclusion and seeks a declaration that it has no duty to defend or indemnify Pinnacle or Emuna.

The rule is well established in Florida that a liability insurer's obligation to defend a claim made against its insured "is determined solely by the claimant's complaint." *Higgins v. State Farm Fire & Cas. Co.*, 894 So. 2d 5, 10 (Fla. 2004). An insurer's duty to defend arises from the insurance contract. *Allstate Ins. Co. v. RJT Enters., Inc*., 692 So. 2d 142, 144 (Fla. 1997). Furthermore, there is no obligation on an insurer to defend an action against its insured "when the pleading in question shows. . . the applicability of a policy exclusion*." Federal Ins. Co. v. Applestein*, 377 So. 2d 229, 231 (Fla. 3d DCA 1979). Policy exclusions are determinative, as an insurer has no obligation "to defend an action against its insured when the pleading in question shows the applicability of a policy exclusion." *Clarendon Amer. Ins. Co. v. Burlington Ins. Co.*, 677 F. Supp. 2d 1317, 1321 (S.D. Fla. June 4, 2009) (citing *Applestein*, 377 So. 2d at 231). Regarding the duty to indemnify,

Florida law does not impose a duty to indemnify absent a duty to defend. When "the facts show that the insured's liability stems from a claim for which no coverage is provided under the policy, the insurer owes no duty of indemnification." *Travelers Indem. Co. of Ill. v. Royal Oak Enters., Inc.*, 344 F. Supp. 2d 1358, 1366 (M.D. Fla. 2004). The "court's determination that the insurer has no duty to defend requires a finding that there is no duty to indemnify." *Trailer Bridge, Inc. v. Ill. Nat'l Ins. Co.*, 657 F.3d 1135, 1146 (11th Cir. 2011) (quoting *Philadelphia Indem. Ins. Co. v. Yachtsman's Inn Condo Ass'n, Inc.*, 595 F. Supp. 2d 1319, 1322 (S.D. Fla. Jan. 22, 2009)). Moreover, "summary is appropriate in declaratory judgment actions seeking a declaration of coverage when the insurer's duty, if any, rests solely on the applicability of the insurance policy, the construction and effect of which is a matter of law." *Northland Cas. Co. v. HBE Corp.*, 160 F. Supp.2d 1348, 1358 (M.D. Fla. 2001) (citing *Talat Enters., Inc. v. Aetna Life & Cas.*, 952 F. Supp. 773 (M.D. Fla. 1996)).

The Court has already determined that the Endorsement Exclusion applies, precluding coverage in this matter. Therefore, consistent with well-established Florida law, Nautilus has no duty to defend or indemnify either Pinnacle or Emuna.

Summary judgment is appropriate. In *Higgins*, the Florida Supreme Court held an insurer may pursue a declaratory action to have its obligation under an unambiguous policy determined even if a court must determine the existence or nonexistence of a fact. 894 So. 2d at 8, 18. Here, there is no material fact that requires determination. Nautilus' policy is unambiguous, and the Court therefore may make a declaration on its obligations. *Id*. In *Philadelphia Indem. Ins. Co. v. Yachtsman's Inn Condo Ass'n, Inc.*, 595 F. Supp. 2d 1319 (S.D. Fla. Jan. 22, 2009), a plaintiff-insurer filed its complaint seeking a declaratory judgment that it had no duty to defend or indemnify a property management company and a condominium association, which was listed as

an additional insured, for injuries sustained by an employee on while cleaning the premises. *Id*. at 1320. The district court read the plain language of the pollution exclusion within an insurance contract and found the "exclusion was unambiguous and excludes from coverage the damages claimed." *Id*. at 1324. Summary judgment was granted to the plaintiff-insurer, declaring that it had no duty to defend nor indemnify the insured based on the determination that coverage was excluded. *Id*. at 1325. Here, the Court has determined the plain language of the Endorsement Exclusion expressly excludes coverage for the Project given the number of individual residential units, and no defenses apply such that Emuna or Pinnacle could assert defenses preventing Nautilus from denying coverage. As such, summary judgment is appropriate because the insurer's duty, or lack thereof, "rests solely on the applicability of the insurance policy. . . which is a matter of law." *Northland*, 160 F. Supp. 2d at 1358.

Based on the undisputed facts in this case, summary judgment is warranted. Nautilus has no duty to defend Pinnacle in the Underlying Action, nor does Nautilus have a duty to defend Emuna in the claims brought against it by BCD. Consistent with Florida law, as there is no duty to defend either party, there is no duty to indemnify either party. Nautilus has established it is entitled to summary judgment in its favor. Conversely, Emuna has not met its burden to establish it is entitled to summary judgment.

## IV.    CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1.  Nautilus' Motion for Summary Judgment, **ECF No. [51]**, is **GRANTED.**

2.  The Court declares that:

    a. The Residential Construction Operations Exclusion bars coverage for claims arising from the Project;

Case No. 22-cv-62300-BLOOM/Valle

b. Nautilus has no duty to defend nor duty to indemnify Pinnacle Engineering & Development, Inc. against the claims in the state court action, *Emuna Construction, LLC v. Pinnacle Engineering & Development, Inc*, Case Number CACE22010941;

c. Nautilus has no duty to defend nor duty to indemnify Emuna Construction, LLC against any claim, settlements entered, or sums awarded against it arising out of the work performed by Pinnacle Engineering on or at the Oaks Place Project.

3. Emuna's Motion for Summary Judgment, **ECF No. [50]**, is **DENIED.**

4. To the extent not otherwise disposed of, any scheduled hearings are **CANCELED**, all pending motions are **DENIED AS MOOT**, and all deadlines are **TERMINATED**.

5. The Clerk of Court is directed to **CLOSE** this case.

6. Final Judgment for Nautilus will be entered in a separate order.

**DONE AND ORDERED** in Chambers at Miami, Florida, on March 4, 2024.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

cc:     counsel of record

33